NELSON PETTY

*v.*

ISAAC PETTY.

1. A testator made no claim to certain property during his life-time, nor by specific devise in his will. His general devisees brought a suit to set aside deeds for the premises, executed by the testator by whom the title was held in trust. *Query,* whether the defendant was a competent witness, exception being taken to his testifying because the complainant was suing in a representative capacity.

2. A defendant who merely defends his title to lands when attacked, cannot be deprived of the protection of the court, although the legal title may have been put in another's name in order to keep the property away from his creditors. In the case in hand the defendant paid for the property in question with his own money, and the title was taken by his trustee directly from the seller.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. James Wilson,* for complainant.

*Mr. George C. Ludlow,* for defendant.

THE CHANCELLOR.

This suit is brought to set aside two deeds for a tavern property (a house and lot) at Cranbury Station, in Middlesex county; one made by Nelson Petty and his wife to Israel H. Pierson, dated November 6th, 1868, and the other from

Israel H. Pierson and his wife to Isaac Petty, dated September 13th, 1869; and to restrain an action of ejectment brought by Isaac Petty, in the supreme court of this state, to recover possession of that property. The complainant is the infant son of Nelson Petty (who died August 14th, 1869), brother of Isaac Petty.

The bill alleges that Nelson Petty was seized in fee of the property at the time of his death; that, on or about the 5th of November, 1868, he entered into an agreement in writing with Israel H. Pierson, to sell the property to him for $3,500; that Pierson, being unable to comply with the agreement on his part, informed Nelson Petty of the fact, on or about the 1st of April, 1869, and, thereupon, pursuant to an arrangement between them, Pierson relinquished all right under the agreement; that, on the 6th of November, 1868, Nelson Petty and his wife, in contemplation of the carrying out of the agreement of purchase by Pierson, executed and acknowledged a deed (the one above mentioned) to Pierson for the property, but that, by reason of the arrangement by which the latter relinquished his right under the agreement, the deed was never delivered, but was kept by Nelson Petty, and was in his possession at the time of his death; that the complainant is, by the will of his father, entitled to the property in question, and that Isaac Petty, John Petty and William Hutchison were the executors of his father's will, and took upon themselves the burthen of its execution, and had possession of all the deeds, papers and muniments of title of the testator. The bill charges that among those papers was the deed to Pierson, and that Isaac Petty, or some of the executors, after the death of the testator, delivered the deed to Pierson for a merely nominal consideration, or for no consideration at all, in order to enable Pierson to convey the property to Isaac Petty; and that, by deed dated September 13th, 1869, for the alleged consideration of $3,500 (while, in fact, but a small consideration, if any, was paid) Pierson and his wife

conveyed the property to Isaac Petty, who now claims to be the owner thereof.

Isaac Petty, by his answer, states that, although the property was conveyed to Nelson Petty, it was purchased by him (Isaac), for himself, and was paid for with his money, and the title was taken and held by Nelson merely in trust for him; that, after the purchase, he took possession of it, and at his own expense, to the amount of $300, put the property, land and buildings in good repair; that, on the 1st of April, 1866 (the property was conveyed to Nelson· in February preceding) he moved into the house, and continued to live there and to carry on the business of a tavern-keeper in it, without payment of rent by, or any demand of rent from, him, until April 1st, 1869; that, in the fall of 1868, he sold the property to Pierson, and, though the written contract was made with Nelson, it was on his account, and only because Nelson held the title; that the $200 which were paid by Pierson on account of the purchase-money were received by the defendant, though receipted for by Nelson; that, on the day on which the agreement was signed, Nelson said to the defendant that he would at once execute a deed in favor of Pierson for the property, so that the defendant might have the means of conveying the property to the latter, and also might thus be secured against any liability to lose the property by the death of Nelson, who · was then in failing health; that the next day Nelson delivered to him the deed to Pierson, and that the delivery was unconditional, and to the end that, whether Pierson should take the property or not, the defendant might, by means of it, have security, as before mentioned; and that, when the agreement with Pierson was made, it was understood that the money which was to be paid was to be paid to the defendant, and that the mortgage which was to be made to secure part of the purchase-money, was to be made to him. The answer also states that the defendant held the deed till after Nelson's death, and then delivered it to Pierson, who, for a consideration, conveyed the property to him.

Petty *v.* Petty.

The question to be decided is, whether the property was, in fact, when the deed for it was delivered to Nelson Petty, the property of Isaac Petty; whether the purchase was made for the latter and the purchase-money paid by him. If such was the fact, the aid of equity cannot be successfully invoked against him, whatever legal objections may be urged against the validity of the apparent legal title which he holds for the property. In such case, equity will uphold, not destroy, his title.

It appears clearly, by the evidence, that the property was bought by the defendant himself, and for himself, from William Warwick; that it was paid for by him with his own money; that the title was taken and held by Nelson merely in trust for him, and that Nelson intended, by means of the deed to Pierson, to secure the property, or the price thereof, in case Pierson took the property according to his agreement, to the defendant. William Warwick testifies that Isaac Petty made the bargain with him which resulted in the sale of the property by him, and in the consequent conveyance of it to Nelson Petty. They were unable to agree upon the price and left it to arbitrators, one chosen by each. Lewis G. Messler swears that he was the arbitrator chosen by Warwick, and that Nelson Petty was the one chosen by Isaac Petty, and that they together fixed the price to be paid by Isaac Petty to Warwick for the property. He is corroborated by Warwick. Warwick testifies that the part of the consideration money which was paid (the consideration was $2,700, and it was all paid but $680, which was the amount of two mortgages on it, one for $180 and the other for $500, the payment of which was assumed by the grantee), was paid to him by William Hutchison, a scrivener residing in Cranbury. William P. Applegate testifies that he paid Nelson Petty $1,300 on the 2d of April, 1866, part of the consideration of a farm sold to him by the latter, and that Nelson Petty took the money up as he laid it down, counted it and handed it to William Hutchison, the scrivener, and told him that that money was to go to Warwick for the

property bought for Isaac Petty. Warwick says the deed for the property was delivered about the 1st of April, 1866. It appears to have been recorded on the 5th of that month. On the 2d of April, 1866, Nelson Petty said to Applegate that Isaac had some money in the farm, and he was going to let him have it and put it into the Cranbury Station property; that Isaac had bought that property. Warwick testifies that Nelson told him to sell the property to Isaac, that he owed Isaac money which he could have at any time, and that Isaac had money besides what he owed him. He says Isaac paid him the money which was paid as earnest of the bargain; that Nelson at first desired that the deed should be made to Isaac, but Warwick suggested that it should be made to him (Nelson) because of Isaac's debts, but Nelson said Isaac's debts were almost all paid. After urging on the part of Warwick, Nelson agreed to take the deed. Jared J. Buckley, an intimate friend of Nelson, testifies that the latter talked to him about the property before it was bought, and said that he had money of his brother's in his hands to buy it, and he thought it would be a good place for business. He says he told him, after the property had been purchased, that Isaac had bought it. John Petty says that Nelson told him, about the time the property was bought from Warwick, that Isaac was about buying it, and the witness asked him what was his idea in buying such a property as that, why he did not buy a hotel property in Cranbury, and Nelson answered that he had about $3,000 of Isaac's money, and he (Nelson) could not buy a hotel in Cranbury for less than $7,000, and he did not want to invest any money in hotel property. Ralph L. Petty swears that Nelson told him that the property belonged to Isaac; that he (Nelson) had his (Isaac's) money, and bought the property with it. And, again, he says that Nelson told him that Isaac's money bought the property.

The proof is abundant that Nelson spoke of the property as Isaac's and said it belonged to the latter. But, further, it appears that Isaac sold the property to Pierson. John Petty

testifies that Nelson told him so, and told him, also, that Isaac was to take a mortgage for almost all of the purchase-money; that Isaac was to have the mortgage. Warwick testifies that Nelson told him that Isaac had sold the property to Pierson, and at one time showed him a wagon which he said Isaac said he had got from Pierson. This witness testifies that Nelson told him that the deed to Pierson was already made out. Buckley swears that Nelson told him that Isaac had sold the property to some hotel-keeper. Pierson kept hotel. Pierson himself, called for the complainant, testifies that Isaac sold the property to him, and that he gave Isaac a wagon, a carry-all, valued at $100, on account of the purchase-money, and afterwards paid to Nelson, for Isaac (because he was unable to find the latter at home to pay it to him), $100 in cash, on the same account. When, subsequently, he wished to be released from the obligation of his agreement to take the property, he called on Nelson about it, and he says the latter at first would not agree to it, but said he wanted to see Isaac. He says he went again the same day; that Isaac, who was absent from home when he went the first time, had not yet returned; that he had further conversation with Nelson on the subject of releasing him from his agreement, and the latter said that he had nothing to do with it and would have to see Isaac.

The fact that the deed to Pierson was made and executed and delivered to Isaac on the next day after the agreement with Pierson was made, is a most important and significant circumstance in the proof. The deed was not to be delivered, by the terms of the agreement, until the 1st of April following. John N. Petty testifies that he was present when the deed was delivered by Nelson to Isaac. He says that Nelson got up and handed the deed to Isaac, and said, "This is the deed for the Cranbury Station property; you had better take it, in case anything should happen." He adds that Isaac took the deed and put it into his pocket and walked out, and he followed him. There is no proof of, nor

apparently any ground for, the charge in the bill that the deed was obtained from the executors or any of them, or that it was obtained fraudulently or surreptitiously by Isaac in any way. On the contrary, the proof is that he obtained it in all respects fairly and openly. The testimony on the part of the complainant is not of such weight as to countervail or even weaken the effect of the very strong proof on the part of the defendant.

It will be perceived that, in my examination of the case, I have left out of consideration the answer of the defendant (under oath in response to the call of the bill) and his testimony. To the admission of his testimony objection was made when he was sworn, on the ground of his incompetency, because, as insisted, the complainant sues as devisee, and therefore is to be regarded as suing in a representative capacity. It may be remarked here, without reference to the objection just mentioned, however, that the land in question was not devised to the complainant specifically. He claims it under a general devise. There is no evidence of any intention to devise that land, or of any claim upon the land, on the part of the testator.

The complainant's counsel insists that if it be held to have been proved that the purchase-money of the property was paid to Warwick by the defendant, and that the deed was made to Nelson Petty in trust for the latter, yet equity will not recognize the trust because, as the complainant alleges, the object of the trust was to keep the property away from the defendant's creditors. It is enough to say that the defendant is not here asking relief at the hands of this court, but is defending his claim to property bought by him, with his own money and for himself, against an adverse claim.

It is also urged that it appears that Nelson paid off a mortgage of $500 on the property, and it is argued that if the defendant's claim to the property be not rejected, the estate of Nelson will sustain loss to the amount of that mortgage. But it does not appear when the mortgage was

paid off, nor with whose money it was paid. It is in evidence that Nelson said, in speaking of Isaac's being about to purchase the property, that he had about $3,000 of Isaac's money. The whole amount of the consideration of the deed from Warwick was $2,700. Again, it appears that Isaac received the $200 paid by Pierson, and that Nelson said, after the agreement with Pierson was made, that Isaac was to have the mortgage (by the agreement it was to be for $3,000) to be given by Pierson. And, further, it does not appear that Nelson, at any time or in any way, made or asserted any claim to, upon or against the property, or upon Isaac in reference to it.

The bill will be dismissed, but without costs.